UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| DAREDEVIL, INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 4:12 CV 01166 RWS |
| | ) |
| ZTE CORP., | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM AND ORDER**

Plaintiff Daredevil, Inc. (Daredevil) sued ZTE USA, a wholly-owned subsidiary of Defendant ZTE Corp., for breach of contract, fraud, and unjust enrichment. The case went to arbitration. Because Daredevil had not sued ZTE Corp. at the time of the arbitration, the arbitrator found that Daredevil's claims against ZTE Corp. were outside the scope of the arbitration. After the arbitrator made this determination, Daredevil brought this suit against ZTE Corp., asserting the same grounds for relief it had sought from ZTE USA. This case was stayed pending arbitration between Daredevil and ZTE USA. Ultimately, the arbitrator rejected Daredevil's claims against ZTE USA. The District Court for the Middle District of Florida confirmed the arbitration award, see PTA-FLA, Inc. v. ZTE USA, Inc., No. 3:11-cv-510-J-32JRK, 2015 WL 12843833 (M.D. Fla. Oct. 6, 2015), and the Eleventh Circuit Court of Appeals affirmed, see PTA-FLA, Inc. v.

1

ZTE USA, Inc., 844 F.3d 1299 (11th Cir. 2016). The stay in the present case was lifted and ZTE Corp. moved for summary judgment, arguing that Daredevil's claims are precluded based on the arbitrator's decision. I find that Daredevil's claims are precluded. As a result, I will grant ZTE Corp.'s motion for summary judgment.

*Background*

This lawsuit arises out of Daredevil's attempt to develop a cell-phone network in St. Louis, Missouri.[1] On September 25, 2008, two ZTE USA representatives—Neil Kushner and Joey Jia—visited Eric Steinmann, Daredevil's owner, at his house in California. After some negotiations, Daredevil entered into a contract (the Missouri MSA) that same day with ZTE USA and ZTE Corp. (ZTE USA's parent corporation).[2] This contract consisted of a five-page "Agreement" as

---

[1] Unless otherwise noted, I am drawing from the parties' statements of undisputed facts. Local Rule 4.01(E) requires a party moving for summary judgment to attach "a statement of uncontroverted material facts," and a party opposing summary judgment to "include a statement of material facts as to which the party contends a genuine issue exists." Both Daredevil and ZTE Corp. make this process difficult. Daredevil repeatedly "objects to the extent that [ZTE Corp.'s] proffered fact[s] are immaterial, vague[,] and misleading," but then often goes on to admit the substance of those facts. For its part, ZTE Corp. responds to the first 54 of Daredevil's 59 additional material facts with the same lengthy statement which starts by denying "that this allegation involves facts that are material to the determination of its motion for summary judgment based upon the preclusive effect of the [Arbitrator's] Final Award."

[2] There is some dispute about whether ZTE Corp. was a party to this contract. The Agreement repeatedly refers to "ZTE", and the signature block for Jia says "ZTE, Inc." The Master Supply Agreement only refers to "ZTE USA, Inc." and the signature block for Jia says "ZTE USA, Inc." However, the Agreement also says that its purpose was to establish a close relationship "that transcends the borders dividing the countries of these two companies." Because ZTE USA is incorporated in the United States, this language would seem out of place if ZTE Corp. was not also a party to the contract. [See Doc. #78, Ex. 2.] Moreover, for the

well as a standardized "Master Supply Agreement" (MSA). The Agreement begins by noting that "the terms of the attached agreement [i.e., the MSA] will apply" and ends with "[a]dditional terms as included." [Doc. #78, Ex. 2.] As Daredevil acknowledged in arbitration, the Agreement and the MSA "was all to be interpreted as one integrated document." [Doc. # 78, Ex. 5. at 60–61. See also Doc. #78, Ex. 3 at 24 ("These dates and terms were incorporated into a six-page contract that Mr. Steinmann typed up himself while the ZTE people were there. … This contract, including about ten pages of boilerplate language … is what has been dubbed the Missouri MSA.").][3] The Missouri MSA specified terms regarding the establishment of Daredevil's St. Louis network. Among other things, ZTE agreed to supply Daredevil with network infrastructure (e.g., cable bundles, battery cabinets, other "core network components," and base stations) by particular dates, to provide handsets at low prices, and to help with software development for phone applications.

---

purpose of summary judgment analysis, I will assume that ZTE Corp. is a party to the contract. This assumption favors Daredevil, the non-moving party. Yet even if ZTE Corp. is a party to the contract, that fact is not material to my analysis.

[3] These statements are Daredevil's own words during arbitration (in their Statement of Claim and closing argument). Despite these admissions, in its opposition to summary judgment, Daredevil claims that the MSA and the Agreement are stand-alone documents. Daredevil argues that "the Agreement was not subject to arbitration" and that the arbitrator "simply did not recognize the Agreement for the purposes of his Award." [Doc. # 98.] The record flatly contradicts these arguments. Throughout the arbitration, the parties (including Daredevil) referred to the contract—the entire contract—as the Missouri MSA. The arbitrator followed this convention in the Final Award. [See Doc. # 78, Ex. 7.]

Things did not go as planned. On May 4, 2011, Daredevil sued ZTE USA for breach of contract, rescission, and unjust enrichment in this Court. See Daredevil, Inc. v. ZTE USA, Inc., 4:11 CV 1054 TIA (E.D. Mo.). Daredevil alleged that ZTE USA had breached the Missouri MSA by failing to deliver the equipment in a timely fashion and that this caused Daredevil to lose the opportunity to develop the St. Louis network. ZTE USA moved to compel arbitration because the MSA included an arbitration provision. The Court granted the motion to compel arbitration on June 22, 2011. See Daredevil, Inc. v. ZTE USA, Inc., 4:11 CV 1054 TIA, 2011 WL 2473083 (E.D. Mo. June 22, 2011).

Daredevil's lawsuit against ZTE USA is only one of a series of lawsuits against ZTE brought by related entities. Around the same time, Daredevil affiliates—collectively known as "ClearTalk" and each "owned and controlled by Eric Steinmann"—filed related cases against ZTE USA. [Doc. #78, Ex. 7.] In South Carolina, PTA-FLA, Inc. sued ZTE USA; in Tennessee, NTCH-West Tenn., Inc. sued ZTE USA; in Washington, NTCH-WA sued ZTE USA; and in California, Steinmann sued ZTE USA and ZTE Corp. In December 2011, after several of these cases were sent to arbitration, the parties stipulated to a consolidated arbitration in Jacksonville, Florida. After the stipulation, the cases operated as a unified proceeding that bound ZTE USA, Daredevil, PTA-FLA,

4

NTCH-West Tenn., and NTCH-WA (hereafter collectively referred to as "ClearTalk entities").

Also in December 2011, the ClearTalk entities filed an Amended Statement of Claim in arbitration, where each entity (including Daredevil) asserted claims against ZTE USA <u>and</u> against ZTE Corp. ZTE Corp. objected to including these claims because, except for Steinmann's claims, this was the first time that they had been brought. Daredevil argued that ZTE Corp. should be included as an "alter ego" of ZTE USA—or, alternatively, that ZTE USA and ZTE Corp. were agent and principal or that their actions made them coconspirators. On June 4, 2012, the arbitrator agreed with ZTE Corp., "determin[ing] that the scope of the arbitration will be all the claims, counterclaims, and defenses that exist or may arise between and among the parties subject to the jurisdiction of the courts in the lawsuits pending at the time of the agreement to arbitrate." [Doc. # 78, Ex. 1.] In making this ruling, the arbitrator limited the claims against ZTE Corp. to those brought by Steinmann in California.

On August 1, 2012, Daredevil and the ClearTalk entities filed their final Statement of Claim in arbitration. This Statement of Claim included allegations relating to the St. Louis market, and ClearTalk attached the entire Missouri

MSA—both the Agreement and the MSA—as an exhibit.[4] Daredevil asserted claims against ZTE USA for breach of contract, fraud, and unjust enrichment.

The arbitration hearing began in August 2013. During ten days of live testimony, the arbitrator "heard close to 30 witnesses, and, in addition, reviewed many hundreds of exhibits submitted for consideration." [Doc. # 78, Ex. 7.] The individuals involved with the Missouri MSA—Steinmann, Kushner, and Jia—all testified at the hearing. Following the hearing, the parties submitted briefs, and the arbitrator heard a full day of closing argument in December 2013. In February 2014, the arbitrator issued the Final Award "in full settlement of all claims submitted to this arbitration," and held that the ClearTalk entities (including Daredevil) "shall take nothing from this action."[5] The arbitrator's Final Award included Daredevil's claims relating to the Missouri MSA: the Final Award discussed the negotiations at Steinmann's home, the failed delivery of network equipment, and the lost opportunity to develop the St. Louis market. The arbitrator rejected Daredevil's claims:

> Within a month after entering the Missouri MSA, ClearTalk sold the Missouri market to its competitor, Leap Wireless. While ClearTalk now insists that the reason for the sale was ZTE's failure to be able to

---

[4] See Doc. # 78, Ex. 2. This further undermines Daredevil's argument that the Agreement and the MSA give rise to separate claims. And, though the arbitrator had limited the involvement of ZTE Corp. by this point, Daredevil's Statement of Claim repeatedly refers to both ZTE USA and ZTE Corp in relation to the St. Louis market.

[5] Additionally, the arbitrator denied ZTE USA's counterclaims relating to alleged nonpayment for delivered equipment.

perform under the Missouri MSA, the evidence at the time as reflected by the draft minutes of a meeting of one of ClearTalk's operatives[] do not mention the troubles with ZTE as the reason for the sale. … ClearTalk also claims that the decision to sell the Missouri market was driven by a "race to market" by a competitor, but the evidence is clear that the competitor had launched its market in St. Louis before the Missouri MSA was signed. [Doc. # 78, Ex. 7 at 13-14.]

ZTE USA then moved for confirmation of the arbitrator's Final Award. On October 6, 2015, the United States District Court for the Middle District of Florida confirmed the arbitration award. See PTA-FLA, Inc., 2015 WL 12843833 at *2. On December 15, 2016, the United States Court of Appeals for the Eleventh Circuit affirmed the district court's judgment. See PTA-FLA, Inc., 844 F.3d 1299.

On June 28, 2012, after the arbitrator determined that Daredevil could not proceed against ZTE Corp., Daredevil filed this action. The First Amended Complaint was filed on August 20, 2012, three weeks after the final Statement of Claim in arbitration. [See Doc. #6.] In the Amended Complaint, Daredevil asserts claims against ZTE Corp. (arising out of the facts described above) for breach of contract, fraud, unjust enrichment, and tortious interference with contract. ZTE Corp. moved for a stay of this case pending arbitration. On April 4, 2013, the court granted the motion finding that "[t]he virtually identical facts and issues in the case against ZTE Corporation and the pending arbitration between Daredevil and ZTE USA warrant a stay of the present litigation." [Doc. # 33 (emphasis added).]

After arbitration concluded, this case was further stayed pending the motion to confirm the arbitration award. The stay was lifted and this case was reopened after the United States Court of Appeals for the Eleventh Circuit affirmed the district court's decision. ZTE Corp. then filed this motion for summary judgment, arguing that the arbitration and the resulting Eleventh Circuit decision precluded Daredevil from bringing its claims in this case.

*Legal Standard*

Summary judgment is appropriate if the evidence, viewed in the light most favorable to the nonmoving party, demonstrates that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Lynn v. Deaconess Medical Center, 160 F.3d 484, 486 (8th Cir. 1998) (citing Fed. R. Civ. P. 56(c)). The party seeking summary judgment bears the initial responsibility of informing the court of the basis of its motion and identifying those portions of the affidavits, pleadings, depositions, answers to interrogatories, and admissions on file which it believes demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). When such a motion is made and supported by the movant, the nonmoving party may not rest on his pleadings but must produce sufficient evidence to support the existence of the essential elements of his case on which he bears the burden of proof. Id. at 324. In resisting a properly supported motion for summary judgment, the plaintiff has an

8

affirmative burden to designate specific facts creating a triable controversy. Crossley v. Georgia Pacific Corp., 355 F.3d 1112, 1113 (8th Cir. 2004).

*Discussion*

Claim preclusion[6] means that "a final judgment forecloses 'successive litigation of the very same claim, whether or not relitigation of the same claim raises the same issues as the earlier suit.'" Taylor v. Sturgell, 553 U.S. 880, 892 (2008) (quoting New Hampshire v. Maine, 532 U.S. 742, 748 (2001)). In this instance, before determining whether Daredevil's claims against ZTE Corp. are precluded, I must answer a choice-of-law question: which law determines the preclusive effect of the arbitration award?

Under Eighth Circuit precedent, the clear answer is that Florida law applies: "The law of the forum that rendered the first judgment controls the [claim preclusion] analysis." St. Jude Med. S.C. v. Cormier, 745 F.3d 325, 327 (8th Cir. 2014) (quoting St. Paul Fire & Marine Ins. Co. v. Compaq Comput. Corp., 539 F.3d 809, 821 (8th Cir. 2008)). The Federal Arbitration Act requires an order confirming an arbitration award to have "the same force and effect in all respects"

---

[6] The preclusive effect of a judgment is determined by claim preclusion and issue preclusion. The parties refer to "res judicata" and "collateral estoppel" throughout their briefs—an older and "more confusing" lexicon. Taylor v. Sturgell, 553 U.S. 880, 892 n.5 (2008) ("Claim preclusion describes the rules formerly known as 'merger' and 'bar,' while issue preclusion encompasses the doctrines once known as 'collateral estoppel' and 'direct estoppel.'") For clarity, I will refer to "claim preclusion" throughout. Because I find this issue dispositive, it is unnecessary to discuss the parties' arguments regarding issue preclusion.

9

as a final judgment on the merits, 9 U.S.C. § 13(c), and Florida considers arbitration awards to be final judgments and gives preclusive effect to arbitration awards confirmed by federal district courts. See ICC Chem. Corp. v. Freeman, 640 So. 2d 92, 92–93 (Fla. Dist. Ct. App. 1994) (per curiam). Because arbitration occurred in Florida and the arbitrator's Final Award was affirmed by the Middle District and the Eleventh Circuit, Florida's claim preclusion law governs. St. Jude Med., 745 F.3d at 327. This is true even though the contract at issue contained a Missouri choice-of-law provision. Id. (applying Florida law for claim preclusion even though contract stated that Minnesota law governed); see also C.H. Robinson Worldwide, Inc. v. Lobrano, 695 F.3d 758, 761, 764 (8th Cir. 2012) (applying Louisiana law for claim preclusion even though contract stated that Minnesota law governed); Myer v. Americo Life, Inc., 469 F.3d 731, 733 n.7, 734 n.8 (8th Cir. 2006) (applying Texas law for claim preclusion even though contract stated that Missouri law governed).

Having found that Florida law applies, I now turn to Florida's requirements for claim preclusion. Here, I am persuaded by the reasoning of the United States Court of Appeals for the Ninth Circuit in NTCH-WA, Inc., v. ZTE Corp., 921 F.3d 1175 (9th Cir. 2019). In that case, the Ninth Circuit held that NTCH-WA (a Daredevil affiliate) was precluded from bringing claims against ZTE Corp. due to the same arbitration at issue in this case. Id. at 1178. That court analyzed the

preclusive effect of the arbitration using Florida law. See id. at 1180–81. The Ninth Circuit's reasoning is uniquely persuasive given that it assesses the same arbitration—and even the same contract, because NTCH-WA claimed to be a third-party beneficiary of the Missouri MSA. Id. at 1183.[7]

In Florida, "[a] judgment on the merits rendered in a former suit between the same parties or their privies, upon the same cause of action, by a court of competent jurisdiction, is conclusive not only as to every matter which was offered and received to sustain or defeat the claim, but as to every other matter which might with propriety have been litigated and determined in that action." Kimbrell v. Paige, 448 So. 2d 1009, 1012 (Fla. 1984) (quoting Wade v. Clower, 114 So. 548, 552 (Fla. 1927)). Florida has four requirements for claim preclusion: "(1) identity of the parties, (2) identity of the quality in the person for or against whom the claim is made, (3) identity of the cause of action, and (4) identity of the thing sued for." St. Jude Med., 745 F.3d at 327 (citing Dadeland Depot, Inc. v. St. Paul Fire & Marine Ins. Co., 945 So. 2d 1216, 1235 (Fla. 2006)); see also Fla. Bar v. St.

---

[7] The Ninth Circuit decided NTCH-WA, Inc. about one month after ZTE Corp. submitted its original brief in support of its summary judgment motion. In its original brief, ZTE Corp. relied primarily on federal law and Missouri law. However, ZTE Corp. filed a notice of supplemental authority with the Court shortly after the Ninth Circuit case was decided. [Doc. # 86.] About three months later, Daredevil filed its response brief—which does not mention NTCH-WA, Inc., instead relying exclusively on Missouri law and federal law.

Louis, 967 So. 2d 108, 119 (Fla. 2007). This case satisfies these four requirements.

First, there is identity of the parties. Although ZTE Corp. was not a party to the arbitration regarding Daredevil's claims, Florida counts those in privity with the parties as "identical" for purposes of this requirement. Seaboard Coast Line R.R. v. Indus. Contracting Co., 260 So. 2d 860, 862–63 (Fla. Dist. Ct. App. 1972). In Florida, "[t]o be in privity with a party to an earlier lawsuit, 'one must have an interest in the action such that she will be bound by the final judgment as if she were a party.'" Provident Funding Assocs. v. MDTR, 257 So. 3d 1114, 1118 (Fla. Dist. Ct. App. 2018) (quoting Pearce v. Sandler, 219 So. 3d 961, 965 (Fla. Dist. Ct. App. 2017)). For preclusion purposes, parent corporations in Florida are in privity with their subsidiaries. See Jenkins v. Lennar Corp., 972 So. 2d 1064, 1066 (Fla. Dist. Ct. App. 2008) ("Because Universal is a subsidiary of Lennar, they are privies, and thus, the parties to each of the previous lawsuits are identical."); see also Beepot v. J.P. Morgan Chase Nat'l Corp. Servs., 57 F. Supp. 3d 1358, 1371 (M.D. Fla. 2014) (applying Florida law and concluding that a parent and wholly-owned subsidiary were in privity). Here, ZTE Corp. and ZTE USA have a parent-subsidiary relationship. Daredevil fails to address Florida law on privity, instead raising inapposite arguments about nonmutual claim preclusion and principal-agent relationships. Under Florida law, "th[e] parent-subsidiary relationship [between

12

ZTE Corp. and ZTE USA] is sufficient to show privity at the time of the arbitration." NTCH-WA, Inc., 921 F.3d at 1183.

Second, there is identity of quality, which refers to the parties' legal capacities. In Florida, if a party sues (or is sued) in a different legal capacity, then claim preclusion does not apply. See O'Brien v. McMahon, 44 So. 3d 1273, 1279 n. 9 (Fla. Dist. Ct. App. 2010) (claim preclusion does not bar subsequent suit by same person "when the plaintiff brings the later suit in a different legal capacity"); Ford v. Dania Lumber & Supply Co., 7 So. 2d 594, 595 (Fla. 1942) (claim preclusion requires "identity of parties suing in the same capacity"). For example, a father suing on behalf of his child involves a different legal capacity than suing on his own behalf; so too does a widow suing for her husband's death on her own behalf rather than as administratix of his estate. See O'Brien, 44 So. 3d at 1279 n. 9. Here, the parties are suing and being sued in the same legal capacities as in the arbitration: their corporate capacities. This meets the second requirement for claim preclusion. See NTCH-WA, Inc., 921 F.3d at 1184.

Third, there is identity of the cause of action. In Florida, "[t]he determining factor in deciding whether the cause of action is the same is whether the facts or evidence necessary to maintain the suit are the same in both actions." Albrecht v. State, 444 So. 2d 8, 12 (Fla. 1984), superseded by statute on other grounds as stated in Bowen v. Dep't of Envtl. Regulation, 448 So. 2d 566, 568–69 (Fla. Dist.

Ct. App. 1984); see also Variety Children's Hosp. v. Mount Sinai Hosp. of Greater Miami, Inc., 448 So. 2d 546, 547 (Fla. Dist. Ct. App. 1984) ("In Florida, the test for deciding whether there is identity of causes of action rests upon a comparison of the facts constituting the underlying transaction.").

Comparing Daredevil's Statement of Claim in arbitration with its First Amended Complaint here, it is clear that the claims are virtually identical. Both allege that Daredevil had been working on establishing a cellular network in St. Louis and that representatives from ZTE (namely, Kushner and Jia) pursued a business relationship with Daredevil. Both allege that ZTE made representations regarding the timely delivery of network equipment, access to handsets, and a cooperative venture to develop software for phone applications. Both allege that the Missouri MSA was signed on September 25, 2008, and both rely on the same terms from the Agreement. Both allege that ZTE failed to deliver the "vast majority of" the promised network equipment, withheld handsets, and did not participate in the joint ventures outlined in the Agreement. Both allege damages resulting from the failed deliveries and a lost opportunity to develop the St. Louis network. The main difference is that the Statement of Claim references "ZTE Corp. and ZTE USA," while the First Amended Complaint refers to "ZTE Corp." alone. [Compare Doc. #78, Ex. 2 at ¶¶ 72–99 with Doc. #6 at ¶¶ 5–32.] This is not sufficient to distinguish these causes of action.

In arbitration, Daredevil brought claims for breach of contract, fraud, and unjust enrichment. In the First Amended Complaint, Daredevil brings claims for breach of contract, fraud, and unjust enrichment and adds a claim for tortious interference with contract. Regardless of the fact that the exact claims are slightly different, the arbitration and this lawsuit concern the same facts: Daredevil alleges that ZTE Corp. promised to deliver network equipment to St. Louis, that it failed to do so, and that this caused Daredevil to lose the opportunity to develop the St. Louis market. The relevant evidence—what was promised, what happened next, and what damages were sustained—is the same in both actions. Moreover, the arbitrator's determination that ZTE USA did not breach the contract negates Daredevil's claim for tortious interference with contract. Because the two suits concern the same facts and evidence, they are the same "causes of action" under Florida law.

Daredevil's main argument is that this case concerns a different contract which was not analyzed in arbitration. However, Daredevil is relying on the same contract (signed on the same day), the same promises, and the same alleged breaches that were raised in arbitration. Daredevil also argues that it was not allowed to conduct discovery against ZTE Corp. in arbitration. However, this is irrelevant in analyzing claim preclusion. These causes of action are identical under Florida law.

Fourth, there is identity of the thing sued for: monetary damages. See Fla. Bar, 967 So. 2d at 119; Heney v. Windsor Corp., 777 F. Supp. 1575, 1577 (M.D. Fla. 1991) ("Plaintiffs sought the same relief in both [cases]—damages.") (citing Valdes v. Ruas, 354 So. 2d 1269 (Fla. Dist. Ct. App. 1978)); AME Civil, LLC v. State Dep't of Transp., 41 So. 3d 235, 242 (Fla. Dist. Ct. App. 2010) ("In both the initial action and the present case, the 'thing sued' for was money damages…"). Seeking damages under various legal theories does not matter; the "identity of the thing sued for" analysis focuses on the difference between damages and other forms of relief. See Inter-Active Servs. v. Heathrow Master Ass'n, 809 So. 2d 900, 902–03 (Fla. Dist. Ct. App. 2002) (injunction not identical "thing sued for" as money damages); Dougan v. Bradshaw, 198 So. 3d 878, 883 (Fla. Dist. Ct. App. 2016) (replevin not identical "thing sued for" as money damages and injunction). Because Daredevil seeks monetary damages in both cases, this final requirement for claim preclusion is satisfied.

Daredevil argues that claim preclusion should not apply because of ZTE Corp.'s "gamesmanship to avoid arbitration." However, ZTE Corp.'s absence was not a result of "gamesmanship"; rather, the arbitrator determined that the arbitration was limited to all the claims that exist "subject to the jurisdiction of the courts in the lawsuits pending at the time of the agreement to arbitrate." At that time, Daredevil had not sued ZTE Corp.—which is why ZTE Corp. was not

included in the arbitration. Additionally, because of the privity requirement above, "it is functionally as if ZTE Corp. had been a party to" the arbitration. NTCH-WA, Inc., 921 F.3d at 1184. As a result, I find that claim preclusion bars Daredevil's claims against ZTE Corp.

Accordingly,

**IT IS HEREBY ORDERED that** Defendant ZTE Corp.'s motion for summary judgment [Doc. 75] is **GRANTED**.

**IT IS FURTHER ORDERED that** Defendant ZTE Corp.'s motion to dismiss for lack of jurisdiction [Doc. 72] and Plaintiff Daredevil, Inc.'s motion for leave to conduct jurisdictional discovery [Doc. 81] are **DENIED** as moot.

_____
RODNEY W. SIPPEL
UNITED STATES DISTRICT JUDGE

Dated this 26th day of November, 2019.